IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| SYLVIA MUNIZ, | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| | § | |
| v. | § | No. EP-14-CV-122-ATB |
| | § | (by consent) |
| | § | |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of the | § | |
| Social Security Administration,[1] | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c), and Rule CV-72 and Appendix C to the Local Court Rules for the Western District of Texas.

Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. For the reasons set forth below, this Court orders that the Commissioner's decision be **AFFIRMED**.

I. PROCEDURAL HISTORY

On January 31, 2011, Plaintiff filed an application for DIB, alleging a disability onset date of May 22, 2010. (R. 121). Her application was denied initially and denied upon

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and the last sentence of 42 U.S.C. § 405(g), she is substituted as the Defendant herein.

No. EP-14-CV-122-ATB                           1

reconsideration. (R. 69, 75). Plaintiff filed a request for a hearing, which was held on October 5, 2012. (R. 24-61, 78). The Administrative Law Judge ("ALJ") issued a decision on October 30, 2012, denying benefits. (R. 8-19). Subsequently, the Appeals Council denied review. (R. 1-3).

## II.   ISSUE

Plaintiff presents the following issue for review:

1. Whether the ALJ's residual functional capacity ("RFC") determination is supported by substantial evidence. (Pl.'s Br. 1, ECF No. 21).

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence. (*Id*. at 5). Specifically, Plaintiff claims that the ALJ's credibility determination was in error because her treatment with Dr. Ajai Agarwal and Nurse Wanda Sanchez demonstrates that Plaintiff was following up with her treatment, that Plaintiff was consistently prescribed medication, and that Plaintiff had significant limitations. (*Id.*) As a result of the ALJ's error in determining Plaintiff's RFC, Plaintiff argues that the ALJ erred by determining that Plaintiff could perform other work that exists in the national economy. (*Id.*) Consequently, Plaintiff seeks a reversal and remand for an award of benefits or for further administrative proceedings. (*Id.* at 5-6).

## III.   DISCUSSION

### A.   Standard of Review

This Court's review is limited to a determination of whether the Commissioner's decision is supported by substantial evidence, and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (citations omitted); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (citation omitted). "Substantial evidence 'is more than a mere scintilla, and less than a

preponderance.'" *Masterson*, 309 F.3d at 272 (citation omitted). The Commissioner's findings will be upheld if supported by substantial evidence. *Id.* (citation omitted). A finding of no substantial evidence will be made only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (per curiam) (internal quotation marks and citation omitted).

In applying the substantial evidence standard, the court may not reweigh the evidence, try the issues *de novo*, or substitute its own judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272 (citation omitted). Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Id.* (citation omitted); *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citation omitted).

**B.     Evaluation Process**

The ALJ evaluates disability claims according to a sequential five-step process: 1) whether the claimant is currently engaged in substantial gainful activity; 2) whether the claimant has a severe medically determinable physical or mental impairment; 3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; 4) whether the impairment prevents the claimant from performing past relevant work; and 5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520. The claimant bears the burden of proof at the first four steps of the analysis. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

In the present case, the ALJ found that Plaintiff had a severe impairment of disorders of the back. (R. 10). The ALJ further found that Plaintiff had several non-severe impairments, including, among other things, gastrointestinal issues. (R. 11). After review of the psychological consultative examination, the ALJ found that there was insufficient evidence to

establish a medically determinable mental impairment. (R. 11-12). The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the listed impairments. (R. 12). In doing so, the ALJ determined that Plaintiff's impairment did not meet the criteria of listing 1.04, Disorders of the Spine. (R. 12-13; 20 C.F.R. Part 404, Subpart P, Appendix 1). After considering the entire record, the ALJ determined that the Plaintiff retained the RFC to perform a full range of light work.[2] (R. 18). The ALJ then determined that Plaintiff was unable to perform any past relevant work. (R. 17-18). After considering Plaintiff's RFC, age, education, and work experience, in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, specifically, Guideline 202.18, the ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform. (R. 18). Consequently, the ALJ found that Plaintiff was not disabled through the date of the decision. (R. 19).

## C.     The ALJ's Determination of Plaintiff's Residual Functional Capacity

Plaintiff contends that substantial evidence does not support the ALJ's determination that she retains the capacity to perform the full range of light work because the ALJ's credibility determination did not properly consider all of the relevant medical evidence in the record. (Pl.'s Br. 5, ECF No. 21). She argues that the evidence that the ALJ used to support his decision is "neither relevant nor sufficient and is not acceptable to a reasonable mind." (*Id.*) Plaintiff

---

[2] 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."). Additionally, SSR 83-10 states, "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."

contends that because the RFC determination is not supported by substantial evidence, the ALJ's decision to deny benefits is not supported by substantial evidence. (*Id.*)

Residual functional capacity ("RFC") is the most an individual can still do despite his or her limitations. 20 C.F.R. §404.1545; SSR 96-8p. The responsibility to determine the plaintiff's RFC belongs to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making this determination, the ALJ must consider all the record evidence and determine the plaintiff's abilities despite his or her physical and mental limitations. *Martinez*, 64 F.3d at 176. The ALJ must consider the limiting effects of an individual's impairments, even those that are non-severe, and any related symptoms. *See* 20 C.F.R. §§ 404.1529, 404.1545; SSR 96-8p. The relative weight to be given the evidence is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001) (per curiam). The ALJ is not required to incorporate limitations in the RFC that he or she did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam).

It is the plaintiff's burden to establish disability and to provide or identify medical and other evidence of her impairments. *See* 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(c). A medically determinable impairment must be established by acceptable medical sources. 20 C.F.R. § 404.1513(a). The plaintiff's own subjective complaints, without objective medical evidence of record, are insufficient to establish disability. *See* 20 C.F.R. §§ 404.1508, 404.1528, 404.1529.

**D.      Analysis**

    **1.  Effect of Prior ALJ's Residual Functional Capacity Determination**

Plaintiff originally filed an application for DIB and supplemental security income on June 17, 2008. (R. 8). Her applications were denied initially, denied upon reconsideration, and

denied after a hearing by an ALJ. (R. 8). The Appeals Council denied review and Plaintiff did not seek review in federal court, making that decision final through May 21, 2010. (R. 8). Plaintiff argues, however, that during the hearing on Plaintiff's current DIB application, which alleged an onset date of May 22, 2010, the current ALJ mentioned that the prior ALJ found that Plaintiff had the RFC to perform sedentary work.[3] (Pl.'s Br. 5, ECF No. 21, citing R. 30). The Commissioner responds by arguing that the ALJ was not bound by the prior RFC assessment in determining that Plaintiff has the RFC to perform light work. (Def.'s Br. 9, ECF No. 22, citing *Muse v. Sullivan*, 925 F.2d 785, 787, 790 (5th Cir. 1991) (per curiam) (Commissioner not bound by previous ALJ's finding that claimant could only perform light work)). Therefore, before evaluating whether the ALJ's opinion is supported by substantial evidence, the Court addresses whether the prior ALJ's RFC determination has any effect on the current ALJ's RFC determination.

In *Porter v. Colvin*, the plaintiff argued that the second ALJ's RFC determination, that the plaintiff could perform light work, was in error because the second ALJ was bound by the first ALJ's RFC determination that the plaintiff could perform sedentary work. *Porter v. Colvin*, Civ. A. No. 12-00768-BAJ-RLB, 2014 WL 1330279, at *3-4 (M.D. La. Mar. 31, 2014). In that case, the first ALJ denied benefits in an order issued on December 18, 2009, and the plaintiff's new application for benefits was submitted on July 7, 2010, alleging an onset date of December 19, 2009. *Id.* at *3 n.2. Based on the lack of overlap between the adjudicated periods, the *Porter* court found that the first RFC determination did not apply to the second RFC

---

[3] 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."). Additionally, SSR 83-10 states, "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday."

determination. *Id.* at *4. The *Porter* court reasoned that "[t]he Social Security Administration treats a subsequent disability application involving a non-adjudicated period as a separate determination requiring de novo review and an independent evaluation of the facts and the evidence." *Id.* (citing AR 00-1(4), 2000 WL 43774, at *3 ("SSA does not consider prior findings made in the final determination or decision on the prior claim as evidence in determining disability with respect to the unadjudicated period involved in the subsequent claim.")). The *Porter* court further reasoned that, although some courts apply res judicata to bar inconsistent RFC determinations, those cases were distinguishable because the adjudicated periods did not overlap and there were additional medical records constituting an independent basis to support a new RFC determination. *Id.* at *5-6. Thus, the *Porter* court concluded that res judicata did not apply on the RFC determination. *Id.* at *6.

  Like the *Porter* court found, the Court finds that the prior ALJ's RFC determination has no bearing on the current ALJ's RFC determination. The prior ALJ issued a decision, determining that Plaintiff had the RFC to perform sedentary work and denying benefits, on May 21, 2010. (R. 8). The current application for benefits was filed over eight months later, on January 31, 2011, with an alleged onset date of May 22, 2010. (R. 121). Therefore, the Court finds that there is no overlap between the adjudicated period covered in the prior RFC determination and the adjudicated period covered in the current RFC determination. Moreover, like the *Porter* court, the Court further finds that there is additional medical evidence, constituting an independent basis to support the new RFC determination, dated after the prior ALJ's decision. Thus, the Court finds that res judicata does not affect the current ALJ's RFC determination.

### 2.  The ALJ's Decision is Supported by Substantial Evidence.

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and results from legal error. (Pl.'s Br. 1, ECF No. 21). In support of her contention, Plaintiff highlights medical evidence from Dr. Onyema E. Amakiri, the consultative examiner, and Dr. Agarwal and Nurse Sanchez,[4] Plaintiff's treating medical sources.[5] (*Id.* at 2-4). Plaintiff argues that the ALJ's credibility determination was in error because the medical evidence regarding Plaintiff's back impairment demonstrates that she repeatedly returned for follow-up visits, that she was consistently prescribed medication for pain and inflammation, and that she requested a referral for aquatic therapy. (*Id.* at 5). Plaintiff further argues that Nurse Sanchez opined in her Medical Source Statement ("MSS") that Plaintiff was disabled and significantly limited. (*Id*, citing R. 454-59). Thus, Plaintiff maintains that the ALJ's RFC determination for light work and the ALJ's determination that Plaintiff could perform other work that exists in the national economy was in error. (*Id.*)

The Commissioner responds by arguing that the ALJ thoroughly addressed all of the evidence and that substantial evidence supports the ALJ's RFC determination. (Def.'s Br. 4, ECF No. 22). Specifically, the Commissioner argues that the ALJ discussed Dr. Amakiri's consultative examination and findings which provide substantial evidence supporting the ALJ's RFC determination. (*Id.* at 4-5). The Commissioner contends that Plaintiff received limited and conservative medical treatment and medication to remedy her allegedly disabling back pain. (*Id.*

---

[4] As a nurse practitioner and registered nurse, Sanchez is not considered an "acceptable" medical source under the regulations. See SSR 06-03p; 20 C.F.R. § 404.1513(d); *see also Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir.1991) (recognizing that the regulations accord less weight to sources other than medical doctors).

[5] Plaintiff's argument is based on her physical residual functional capacity determination and, therefore, the Court does not consider Plaintiff's reference to the psychological consultative examination. (Pl.'s Br. 3, 5, ECF No. 21).

at 5-7). The Commissioner further claims that Nurse Sanchez was not an acceptable medical source and that the ALJ was entitled to assign little weight to the extreme limitations set forth in her MSS. (*Id.* at 7-9). The Commissioner also claims that Plaintiff's insured status ended on June 30, 2012, and, therefore, Plaintiff's medical treatment after that date is not relevant to the ALJ's RFC determination. (*Id.* at 6-7). Therefore, the Commissioner maintains that substantial evidence supports the ALJ's decision. (*Id.* at 9-10).

A review of the record evidence indicates that there is substantial evidence to support the ALJ's conclusion that Plaintiff retained the capacity to perform the full range of light work. Consequently, the ALJ did not err at step five by applying the Medical-Vocational Guidelines and in concluding that Plaintiff could perform other work that exists in the national economy.

    a. The ALJ's Credibility Determination

In assessing the credibility of Plaintiff's statements, the ALJ was required to consider, in addition to the objective medical evidence: 1) Plaintiff's activities of daily living, 2) the alleged location, duration, frequency, and intensity of Plaintiff's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medications that claimant takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, that Plaintiff receives or has received for relief of pain or other symptoms; 6) any measures other than treatment that Plaintiff uses to relieve pain or other symptoms; and 7) any other factors concerning Plaintiff's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. § 404.1529(c).

The Court finds that the ALJ set out the relevant factors that must be considered and discussed each one when making his RFC determination. (R. 13-17). The ALJ discussed Plaintiff's alleged daily activities and her allegations regarding the location, duration, frequency,

and intensity of her pain and other symptoms. (R. 13-16). The ALJ also discussed that Plaintiff took Tramadol,[6] Meloxicam, Cymbalta, Lyrica, Motrin, Zyrtec, Zithromax, Mobic, and Tricor for pain, nasal congestion, coughing and sneezing, and hypertriglyceridemia.[7] (R. 14-15). The ALJ noted that Plaintiff's treatment was inconsistent with disabling symptoms, that she was not referred for specialized evaluations or treatment, and that there was no convincing evidence of any change or decrease in Plaintiff's condition on or after the alleged onset date. (R. 17). The ALJ further noted that Plaintiff's allegations of pain and limitations were not supported by the medical evidence. (R. 16-17). The ALJ stated that there was no evidence of specific restrictions or limitations and that the ALJ's RFC determination was consistent with Dr. Amakiri's evaluation. (R. 17). The ALJ further stated that Nurse Sanchez's opinion was accorded little weight because she is not an acceptable medical source and her opinions were inconsistent with Plaintiff's medication, treatment records, and alleged daily activities. (R. 17).

The ALJ's credibility determination is "precisely the kind[] of determination[] that the ALJ is best positioned to make" as the ALJ "enjoys the benefit of perceiving [the plaintiff] first-hand . . . at the hearing." *Falco*, 27 F.3d at 164 n.18. Additionally, the ALJ is not required to incorporate limitations in the RFC that he or she did not find to be supported in the record. *See Morris*, 864 F.2d at 336. Therefore, given the ALJ's analysis of the factors set forth in 20 C.F.R. § 404.1529(c), the Court finds that the ALJ's credibility determination is supported by substantial evidence and is not the result of legal error.

---

[6] Tramadol is the generic form of Ultram, which is also noted as one of Plaintiff's medications. (R. 14; 475).

[7] Hypertriglyceridemia is defined as "excessive triglycerides in the blood." *See Dorland's Illustrated Medical Dictionary* 897 (32d ed. 2012).

### b. The ALJ's Residual Functional Capacity Determination

In reviewing a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs "four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [the claimant's] age, education and work history." *See Martinez*, 64 F.3d at 174 (citation omitted).

The Court finds that Dr. Amakiri's examination provides substantial evidence supporting the ALJ's RFC determination. On March 23, 2011, Plaintiff presented to Dr. Amakiri with allegations of shoulder pain with associated neck pain, arm pain, hand pain, and finger pain worsened by lifting, back pain with associated back stiffness worsened by lifting overhead, standing, and walking, and gastrointestinal problems. (R. 403-04). As to Plaintiff's back pain, Dr. Amakiri noted that Plaintiff's past treatment included over-the-counter medication and no hospitalizations, surgery, or other treatment. (R. 403). A review of Plaintiff's systems was positive for shoulder pain and back pain but negative for gastrointestinal problems. (R. 404). Dr. Amakiri stated that an x-ray of Plaintiff's left shoulder revealed no fracture or deformities and an x-ray of Plaintiff's lumbar spine revealed no fracture, dislocation, or disc narrowing. (R. 404).

Upon physical examination, Dr. Amakiri observed that Plaintiff's musculoskeletal system revealed a full range of motion, symmetric strength, and normal muscle tone without any atrophy or abnormal movements. (R. 405). Dr. Amakiri further observed that Plaintiff's range of motion in her lumbar spine revealed ninety degrees flexion without pain, forty-five degrees extension

without pain, forty-five degrees left side bend without pain, forty-five degrees right side bend without pain, sixty degrees left rotation without pain, and sixty degrees right rotation without pain. (R. 405). Dr. Amakiri also observed that Plaintiff's movement was normal, that Plaintiff was able to reach an object when asked to do so, that Plaintiff could finger and feel an object when asked to do so, and that Plaintiff could hop and squat without difficulty. (R. 405). Moreover, Dr. Amakiri noted that Plaintiff's muscle strength was five out of five for all groups tested, that Plaintiff had normal muscle tone and volume, and that Plaintiff's hand strength was five out of five bilaterally. (R. 405). Dr. Amakiri further noted that Plaintiff was able to ambulate without assistance, that Plaintiff's gait and station revealed midposition without abnormalities and normal arm swing, and that Plaintiff had normal heel-toe and tandem walking. (R. 405). Dr. Amakiri then observed that Plaintiff had a positive straight-leg raise test bilaterally at thirty degrees with pain radiating to the left and right buttocks and posterior thighs. (R. 405). Dr. Amakiri diagnosed Plaintiff with shoulder pain and lower back pain. (R. 405). Dr. Amakiri stated that "[b]ased on the current evidence obtained during [this] examination, and a review of the enclosed records, [Plaintiff] has no limitations with speaking, hearing, handling objects, carrying, lifting, moving about, standing[,] and sitting." (R. 405). Given the lack of functional limitations observed during Dr. Amakiri's examination and review of prior medical records, the Court finds that Dr. Amakiri's findings provide substantial evidence supporting the ALJ's RFC determination.

Additionally, the Court finds that Plaintiff's six visits to the Montwood Medical Clinic[8] provide substantial evidence supporting the ALJ's RFC determination because they lack

---

[8] The examination dates are January 13, 2012, February 27, 2012, April 23, 2012, August 10, 2012, September 5, 2012, September 28, 2012. (R. 460-83). The examinations on January 13, 2012, February 27, 2012, and August 10, 2012, were performed by Dr. Agarwal. (R. 462, 467, 475). The examinations

consistent complaints of pain and consistent objective medical evidence of Plaintiff's back pain. While Plaintiff presented to Dr. Agarwal on January 13, 2012, with problems relating to her hips, joints, lower back, leg/thigh, and shoulder, she failed to indicate any other complaints of pain in the remaining visits contained in the record. (R. 460, 464, 468, 472, 476, 480). Furthermore, a review of Plaintiff's systems on January 13, 2012, revealed complaints of muscle pain, lower back pain, and joint pain but a review of Plaintiff's systems in the remaining examinations failed to indicate any other pain.[9] (R. 460-61, 464-65, 468-69, 472-73, 476-77, 480-81). During her physical examinations on January 13, 2012, and August 10, 2012, Plaintiff was observed with tenderness at L3-L5, paraspinal muscle spasm, limited range of motion, normal reflexes, no sensory loss, and no major bone, joint, tendon, or muscle changes. (R. 462, 474). In the remaining physical examinations, Plaintiff had no major bone, joint, tendon, or muscle changes.[10] (R. 466, 470, 478, 482). An MRI dated February 17, 2012, shows minimal degenerative changes in the second lumbar vertebra, degenerative disc disease L2-L3 with mild bulging disc, mild to moderate posterocentral herniated disc with mild spinal stenosis, and changes at multiple disc levels. (R. 487).

The Court further finds that Plaintiff's visits to Montwood Medical Clinic reveal few, if any limitations, and demonstrate conservative treatment. Plaintiff was diagnosed with a variety

---

on April 23, 2012, and September 26, 2012, were performed by Nurse Sanchez. (R. 471, 482-83). The examination on September 5, 2012 was performed by Nurse Vivian Villarreal. (R. 479).

[9] The Court notes that Plaintiff's February 27, 2012 examination was related to sore throat, cough, and nasal congestion. (R. 464).

[10] These examinations are dated February 27, 2012, April 23, 2012, September 5, 2012, and September 28, 2012. (R. 466, 470, 478, 482).

of conditions including: lumbosacral spondylosis,[11] lumbar radiculopathy,[12] chronic back pain, chronic pain syndrome, low back pain, hypercholesterolemia,[13] essential hypertriglyceridemia, depression, fatigue, and acute bronchitis. (R. 462, 466, 470, 478, 482).[14] During Plaintiff's visits to Montwood Medical Clinic, she was prescribed Ultram, Ibuprofen, medication for cough, congestion, and sore throat, Mobic, and Tricor. (R. 462-63, 467, 475, 479, 482-83). Moreover, only Nurse Sanchez placed any limitations on Plaintiff's ability to function, stating that Plaintiff was unable to lift, bend, stoop, carry, sit for greater than one half hour without back pain, that Plaintiff had difficulty going from sitting to standing and standing to sitting, that Plaintiff had difficulty getting out of bed in the morning, and that Plaintiff had a permanent impairment as a result of a forklift accident in 2006. (R. 470). The Court notes that Plaintiff requested a referral for aquatic therapy on September 5, 2012, however, the record is devoid of evidence that Plaintiff's request was ordered by any of Plaintiff's treating sources. (R. 476-79). The Court also notes that Plaintiff was requested to follow up in one week after her January 13, 2012 visit, to follow up two weeks after her February 27, 2012 visit, and to follow up one month after her April 23, 2012 visit but Plaintiff failed to do so within the listed time frames providing further evidence supporting the ALJ's RFC determination. (R. 460-83; *see Quintanilla v. Colvin*, No. EP-12-CV-00444-RFC, 2014 WL 1319298, at *6 (W.D. Tex. Mar. 27, 2014) ("The failure to

---

[11] Lumbar spondylosis is defined as "degenerative joint disease affecting the lumbar vertebrae and intervertebral disks, causing pain and stiffness, sometimes with sciatic radiation due to nerve root pressure by associated protruding disks or osteophytes." *See Dorland's Illustrated Medical Dictionary* 1754 (32d ed. 2012).

[12] Lumbar radiculopathy is defined as "any disease of lumbar nerve roots, such as from disk herniation or compression by a tumor or bony spur, with lower back pain and often paresthesias." *See Dorland's Illustrated Medical Dictionary* 1571 (32d ed. 2012).

[13] Hypercholesterolemia is defined as "excessive cholesterol in the blood." *See Dorland's Illustrated Medical Dictionary* 887 (32d ed. 2012).

[14] Dr. Agarwal provided no diagnosis on August 10, 2012. (R. 474).

follow prescribed treatment, where no good reason exists, is also an indication of non-disability." (citing *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990)))). As the records contain few limitations and conservative treatment, the Court finds that Plaintiff's medical records from Montwood Medical Clinic provide substantial evidence supporting the ALJ's RFC determination.

The Court also finds that the ALJ properly accorded little weight to the MSS provided by Nurse Sanchez. (R. 17; 454-58). On October 4, 2012, Nurse Sanchez completed an MSS which included substantial limitations. (R. 454-58). Nurse Sanchez determined that Plaintiff could walk approximately seventy-five feet without rest or severe pain, that Plaintiff could sit for fifteen minutes, that Plaintiff could stand for fifteen minutes, that Plaintiff could sit and stand/walk for a total of less than two hours in an eight hour workday, that Plaintiff would be required to walk around during an eight hour workday, that Plaintiff must walk around every fifteen minutes for five minutes, that Plaintiff requires a position that allows her to sit, stand, and walk at will, that Plaintiff often would need to take unscheduled breaks every fifteen minutes for approximately one half hour, that Plaintiff's legs should be elevated with prolonged sitting, and that Plaintiff does not require an assistive device. (R. 457). Nurse Sanchez further determined that Plaintiff could not lift and carry any amount of weight, that Plaintiff could occasionally look down, turn her head right or left, look up, and hold her head in a static position, that Plaintiff could never twist, bend, crouch/squat, climb ladders or stairs, that Plaintiff cannot reach during an eight hour workday, that Plaintiff can only handle objects for two hours in an eight hour workday, that Plaintiff's symptoms produce good days and bad days, and that Plaintiff would require more than four days off per month. (R. 457-58). She also noted no problem with Plaintiff's ability to finger. (R. 458). Nurse Sanchez stated, "I find it most unlikely that

[Plaintiff] will be able to sustain employment due to her pain which increases her fatigue [and] depression. Aquatic therapy recently ordered. Antidepressants make her feel very ill due to other [medications] for lumbar pain." (R. 458).

The Court finds that the ALJ was free to assign little weight to Nurse Sanchez's opinion. First, as noted by the ALJ, Nurse Sanchez is not a physician, psychologist, or specialist in the treatment of back pain or mental illness and, therefore, is not considered an acceptable medical source under the regulations. *See* SSR 06-03p; 20 C.F.R. § 404.1513(d); *see also Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir.1991) (recognizing that the regulations accord less weight to sources other than medical doctors). Moreover, good cause existed to support the ALJ's determination that Nurse Sanchez's opinion is inconsistent with the record. Even if Nurse Sanchez was a proper medical source, the ALJ is free to assign "little or no weight" to the opinion of any physician for good cause. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000) (citations omitted). Good cause exists where statements are "brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Perez v. Barnhart*, 415 F.3d 457, 466 (5th Cir. 2005) (emphasis omitted). Here, the ALJ determined that Nurse Sanchez's MSS contained extreme limitations that were unsupported by Plaintiff's medication, Plaintiff's treatment records, or Plaintiff's daily living activities. (R. 17). A review of the record demonstrates that Nurse Sanchez's assignment of extreme physical limitations does not coincide with the rest of the medical evidence. Moreover, Nurse Sanchez's own physical examination of Plaintiff is inconsistent with the extreme limitations set forth in the MSS. (R. 454-58; 468-71, 480-83). Therefore, the Court finds that good cause existed for assigning Nurse Sanchez's opinion little weight.

Finally, the Court is persuaded by the Commissioner's argument that medical records after June 30, 2012, are not relevant to the disability determination. *See Thomas v. Astrue*, Civ. A. No. 07-890-FJP-CN, 2009 WL 1421318, at *2 (M.D. La. May 19, 2009) ("Under the Social Security Act, a plaintiff must establish disability on or before the date he/she was last insured in order to be entitled to a period of disability and disability insurance benefits." (citing *King v. Barnhart*, 372 F. Supp. 2d 932 (S.D. Tex. 2005))). Therefore, the Court finds that even if the ALJ did not assign the proper weight to the medical records from August 10, 2012, September 5, 2012, and September 28, 2012, and Nurse Sanchez's October 4, 2012 MSS, the ALJ was not required to consider them as relevant evidence during his disability determination because they are outside of the relevant period, which ended on June 30, 2012.

As the Court finds that substantial evidence from Dr. Amakiri and the Montwood Medical Center supports the ALJ's RFC determination and that the ALJ properly rejected Nurse Sanchez's MSS, the Court rejects Plaintiff's argument that Plaintiff is unable to perform other work that exists in the national economy. In determining that Plaintiff could perform other work, the Court finds that the ALJ properly considered Plaintiff's RFC, age, education, and work experience, in conjunction with the Medical-Vocational Guidelines. (R. 18). Accordingly, the Court finds that the ALJ's determination is supported by substantial evidence and is not the result of legal error.

### IV.   CONCLUSION

Based on the foregoing, the Court **HEREBY ORDERS** that the decision of the Commissioner be **AFFIRMED** consistent with this opinion.

**SIGNED** and **ENTERED** this 27th day of August, 2015.

**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**